# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

REBECCA GROVE, Individually and as     *
Personal Representative of the
Estate of ROYCE A. GROVE     *
3878 Barachel Drive
York, Pennsylvania 17402     *

     Plaintiff     *

v.     *

KRISTIAN ULLOA, M.D.     *
520 Upper Chesapeake Drive
Suite 306     *
Bel Air, Maryland 21014
    *
and
    *     Civil Action No.
UNIVERSITY OF MARYLAND MEDICAL
SYSTEMS CORPORATION     *
22 South Greene Street
Baltimore, Maryland 21201     *

SERVE ON:   Resident Agent     *
             Megan M. Arthur
             250 W. Pratt Street, Suite 880     *
             Baltimore, Maryland 21201
    *
and
    *
UNIVERSITY OF MARYLAND SURGICAL
ASSOCIATES, P.A.     *
22 South Greene Street
Baltimore, Maryland 21201     *

SERVE ON:   Resident Agent     *
             Ronald A. Brown
             Department of Surgery     *
             22 South Greene Street
             Room N4E40     *
             Baltimore, Maryland 21201
    *
and

| | |
|---|---|
| BALTIMORE WASHINGTON MEDICAL CENTER, INC.<br>301 Hospital Drive<br>Glen Burnie, Maryland 21061<br><br>SERVE ON:   Resident Agent<br>Megan M. Arthur<br>250 W. Pratt Street<br>Suite 880<br>Baltimore, Maryland 21201<br><br>Defendants | *<br>*<br>*<br>*<br>*<br>* |

\*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT AND ELECTION FOR JURY TRIAL

Plaintiff, Rebecca Grove, Individually and as Personal Representative of the Estate of Royce A. Grove, by their attorneys, Paul D. Bekman, and Salsbury, Clements, Bekman, Marder & Adkins, L.L.C., sues the Defendants, Kristian Ulloa, M.D., University of Maryland Medical Systems Corporation and University of Maryland Surgical Associates, P.A., and Baltimore Washington Medical Center, Inc., and states as follows:

### COUNT I

1. The venue for this claim is proper in United States District Court for the District of Maryland as the amount in controversy exceeds $75,000 and the Plaintiff and Defendants have diversity of citizenship.

2. A Statement of Claim was filed with the Health Care Alternative Dispute Resolution Office. A Certificate of Qualified Expert and Report were filed and Plaintiff elected to waive arbitration.

3. That at all times hereinafter set forth, the Defendant Kristian Ulloa, M.D. held himself out to the Decedent, Royce A. Grove, and to the general public as an experienced

competent and able physician possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and of surgery, and as such owed a duty to the Decedent to render that degree of care and treatment to him which is ordinarily rendered by those who devote special study and attention to the practice of medicine.

4. That at all times hereinafter set forth, Marshall E. Benjamin, M.D. ("Dr. Benjamin") held himself out to the Decedent, Royce A. Grove, and to the general public as an experienced competent and able physician possessing or providing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine and of surgery, and as such owed a duty to the Decedent to render that degree of care and treatment to him which is ordinarily rendered by those who devote special study and attention to the practice of medicine.

5. That at all times hereinafter set forth, the Defendant, Baltimore Washington Medical Center, Inc., was and is a medical facility offering medical and other related services to the general public and in such capacity as a hospital, its agents, servants and/or employees, medical staff and consultants held themselves out as practicing ordinary standards of medical, hospital and nursing care and, as such, owed a duty to the Decedent to render and provide health care within the ordinary standards of medical, hospital and nursing care, and to exercise reasonable skill and care in the selection of its personnel, to provide competent physicians, hospitalists, radiologists, technicians, nurses and other medical personnel, possessing that degree of skill and knowledge which is ordinarily possessed by those who devote special study and attention to the practice of medicine, and to supervise and provide its patients with diagnostic and

medical services and treatment commensurate with the condition from which the patient suffers and for which patient entered said hospital.

6. That at all times relevant hereto, the Defendant Ulloa was Fellow at the University of Maryland Hospital and at Baltimore Washington Medical Center, and as such was acting as an agent, servant, apparent agent or employee of the Defendants, University of Maryland Medical Systems Corporation and Baltimore Washington Medical Center, Inc.

7. At all times described herein, Dr. Benjamin was acting as an employee, agent, or apparent agent of the Defendant, University of Maryland Surgical Associates, P.A.

8. In 2003, the Decedent, Royce A. Grove, who had a history of coronary artery disease with by pass surgery (in 1992), hypertension and hyperlipidemia, was found on by a screening examination to have an asymptomatic infrarenal abdominal aortic aneurysm. Subsequent CT imaging studies showed the aneurysm to be 3.7 cm. in its greatest dimension.

9. After the Decedent was diagnosed with the abdominal aortic aneurysm, he was followed for many years by Clifford W. Lynd, M.D. for any aneurysmal changes. His abdominal aortic aneurysm remained stable and unchanged in size until testing on August 13, 2008, showed that it had enlarged and had a localized area of dissection within the aortic aneurysm.

10. Due to the aneurysmal changes, the Decedent was referred to the Maryland Vascular Center at Baltimore Washington Medical Center, where on September 3, 2008, he was seen by Dr. Benjamin and by William F. Flinn, M.D. After an examination by Dr. Flinn and testing by Dr. Benjamin, Dr. Flinn found the dissections to be fairly benign. Doctor Flinn recommended standard treatment for an infrarenal abdominal aortic aneurysm, which he stated was repeat CT scans beginning in three months and elective treatment if the aneurysm grew to

4

over 5 cm.

11. Pursuant to the recommended standard treatment, the Decedent continued to undergo periodic testing at the Maryland Vascular Center, until testing in December of 2010, showed aneurysmal enlargement. Doctor Flinn first recommended surgery, and then over the next six months, the providers at the Maryland Vascular Center ordered further testing and performed further examinations of the Decedent before scheduling him for endovascular repair of his infrarenal abdominal aortic aneurysm.

12. On June 8, 2011, the Decedent reported to the Baltimore Washington Medical Center for blood work at or about 6:50 a.m., preliminary to his endovascular surgery. Laboratory studies showed his pre-operative hematocrit level to be 41.3, slightly below the laboratory reference range of 42.0 to 52.0.

13. Shortly after 8 a.m. on June 8, 2011, the Decedent was taken to the operating suite, where he underwent the scheduled endovascular repair of his infrarenal abdominal aortic aneurysm. The surgery was performed by Dr. Benjamin who was assisted by the Defendant Ulloa.

14. During the surgery, the Decedent's left distal common artery was injured causing an estimated blood loss of 500 cc and a drop in blood pressure to 80/50, and requiring the Decedent to receive an intraoperative transfusion of two units of blood. Attempts were made at the surgery by Dr. Benjamin and by the Defendant Ulloa to make repairs by extending the stent graft into the external iliac artery.

15. Post-operatively, Dr. Ulloa ordered laboratory blood studies at 12:15 p.m., which showed that the Decedent's hematocrit level had fallen to 32.0, a drop of 22.5%, but neither Dr.

Ulloa or Dr. Benjamin ordered a CT to rule out bleeding.

16. Post-operatively in the PACU, the Decedent complained of severe back pain ( a symptom of internal bleeding) to Dr. Ulloa, who thereafter placed orders for Dilaudid, Percocet, and Morphine.

17. At 4 p.m., the Decedent was seen in the PACU by Dr. Benjamin to address the Decedent's complaints of severe back pain.

18. At 6:05 p.m., on June 8, 2008, while the Decedent was still in the PACU, new laboratory blood studies showed that his hematocrit level continued to fall to 30.4. Although Dr. Ulloa was notified of the Decedent's falling hematocrit level, he did not come in to see the patient nor did he issue any orders for additional testing.

19. At or about 9:41 p.m., the Decedent was transferred from the PACU to the second floor (bed 242), a section of the hospital where the nursing staff was not trained to provide post operative care to patients having undergone AAA repairs. At and after the time of transfer, the Decedent was still complaining of severe back pain for which he was receiving IV morphine.

20. At 7:45 a.m. on June 9, 2011, the Decedent was seen in his room by the Defendant Ulloa who reportedly found no evidence of bleeding despite knowing of the Decedent's falling hematocrit levels and complaints of back pain. Instead of ordering additional blood studies or a CT, Dr. Ulloa simply ordered that Decedent be discharged later in the day on pain medications.

21. At 2:05 p.m. on June 9, 2011, pursuant to an order by the Defendant Ulloa, Decedent was injected with 40 mg of the blood thinner Lovenox,, the administration of which is contraindicated in patients who are bleeding internally or suspected of bleeding internally.

22.     The Decedent remained at the Hospital until his actual discharge shortly before 3 p.m. Prior to being discharged, he continued to complain of back and groin pain, and his condition worsened. As set out by Britney Gilliland, RN in her nursing progress note at discharge,

> patient's vitals upon discharge are 105/59 with heartrate ranging in the 90s - 100s sinus tach. Patient's pulse ox on room air is 91%. Dr. Chris Ulloa, vascular team member, was called and made aware of vitals, patient has slight expiratory wheeze, and that he did not have an H/H drawn this morning. No orders given to check H&H or any other bloodwork. Dr. Ulloa ok with patient being discharged home today. Patient has complaints of pain at the post-op, bilateral groin sites, and was given the ordered percocet prior to discharge.

23.     Once the Decedent arrived home, he continued to suffer from back pain. When his wife, the Plaintiff Rebecca Grove, awoke around 4:30 a.m. on June 10, 2011, she found her husband sitting in his office. He looked at her and said, "Honey you better call 911." Then he collapsed. 911 was called and the Decedent was transported by ambulance to the emergency department at York Hospital, where he arrived in asystolic cardiac arrest. The Decedent was thereafter declared dead at 5:37 a.m.

24.     The autopsy that was subsequently performed showed evidence of continued post surgical hemorrhaging.

25.     The Defendant, Kristian Ulloa, M.D., was negligent in that he:

    a.     failed to properly evaluate the Decedent's post-operative condition;

    b.     failed to properly diagnose and treat the Decedent's post-operative condition in a timely fashion;

    c.     failed to recognize and appreciate the seriousness of the Decedent's post-operative condition;

      d.      failed to perform appropriate and timely testing, examinations and treatment;

      e.      ordered the administration of Lovenox to the Decedent whom he (Dr. Ulloa) knew or should have known or suspected was bleeding internally;

      f.      prematurely discharged the Decedent from the hospital;

      g.      and was otherwise negligent, careless and reckless.

26. The Defendant, University of Maryland Surgical Associates, P.A., by and through its agent and employee Marshall E. Benjamin, M.D., was negligent in that it:

      a.      failed to properly evaluate the Decedent's post-operative condition;

      b.      failed to properly diagnose and treat the Decedent's post-operative condition in a timely fashion;

      c.      failed to recognize and appreciate the seriousness of the Decedent's post-operative condition;

      d.      failed to perform appropriate and timely testing, examinations and treatment;

      e.      and was otherwise negligent, careless and reckless.

27. As a direct result of the negligence of the Defendants, the Decedent was caused to suffer painful and permanent injuries to his body; was caused to sustain severe mental anguish and emotional pain and suffering, was caused to incur hospital, medical expenses and was caused to incur other financial losses and damage.

28. All of the losses, damages and injuries sustained by the Decedent were caused by the negligence of the Defendants without any negligence on part of the Decedent contributing

thereto.

WHEREFORE, Rebecca Grove, as Personal Representative of the Estate of Royce A. Grove, claims damages against the Defendants, Kristian Ulloa, M.D., University of Maryland Medical Systems Corporation and University of Maryland Surgical Associates, P.A., and Baltimore Washington Medical Center, Inc., in an amount to be determined by a jury.

## COUNT II

### *(Wrongful Death)*

29. The Plaintiff, Rebecca Grove, Individually, incorporates paragraphs 1 through 28 of the Statement of Claim as if they were fully set forth at length herein.

30. The Plaintiff, Rebecca Grove, and the Decedent, Royce A. Grove, were married on 11/19/88. They enjoyed a close and loving relationship throughout their married life.

31. As a result of the negligence of these Defendants and the wrongful death of Royce A. Grove, the Plaintiff, Rebecca Grove, as the surviving spouse of Royce A. Grove, has suffered severe mental anguish and emotional pain, pecuniary loss, and has lost and been deprived of the society, companionship, comfort, care, attention, advice, counsel, services and support which the Decedent could have and would have afforded and rendered had he continued to live.

32. By reasons of the negligence of the Defendants which culminated in the death of the Decedent, a cause of action has accrued in accordance with the Annotated Code of Maryland Courts and Judicial Proceedings, §3-901 et seq to the Plaintiff, Rebecca Grove, the surviving spouse of the Decedent, for the compensation to her for all the damages, injuries and losses, past, present and future which she has sustained and will in future sustain, all of which are approximately caused by the negligence of the Defendants without any negligence on part of the

Plaintiff or her Decedent thereunto contributing.

WHEREFORE, the Plaintiff, Rebecca Grove, claims damages against the Defendants, Defendants, Kristian Ulloa, M.D., University of Maryland Medical Systems Corporation and University of Maryland Surgical Associates, P.A., and Baltimore Washington Medical Center, Inc., jointly and severely in an amount to be determined by a jury.

_____
PAUL D. BEKMAN
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS L.L.C.
300 W. Pratt Street
Suite 450
Baltimore, Maryland 21201
(410) 539-6633

Attorneys for Plaintiff